CLARKSON, J., not sitting.
Action by plaintiffs as legatees under the will of James A. Bryan, deceased, to compel an accounting by the defendant executrix and the payment of the legacies bequeathed in the third item of said will. The plaintiffs filed their complaint and the defendants filed separate answers, Alice H. Bryan in both her individual and her representative capacity. *Page 823 
James A. Bryan, a resident off Craven County, died on 30 January, 1923, leaving a will, dated 20 February, 1918, and probated 21 February, 1923, in the office of the clerk of the Superior Court of Craven. The Following are the material items:
Second. "I direct that my just debts shall be paid by my executrix, and to this end I here by authorize and empower her to sell and make title to a sufficiency of may timber and trees with the usual rights of way and terms of years to cut and remove the same to pay said debts, or she may sell in fee simple enough of my country lands to pay same and to make title to same, and I hereby charge my country lands with the payment of all my debts, so that said debts shall not have to be paid out of my personal estate."
Third. "I give and bequeath to my niece, Laura Hughes, $5,000; to my brother, Washington Bryan, $10,000; to my friend, Miss Mary Shepard, $2,000; and $5,000 to the Wardens and Vestry of Christ Protestant Episcopal Church of New Bern, N.C. all bequests in this item to be paid by executrix out the income from my estate and at the convenience of my executrix."
Sixth. "I give and bequeath to may beloved wife, Alice H. Bryan, all the capital stock that I shall own in the National Bank of New Bern, New Bern, N.C. at my death (my present holdings consisting of 501 shares standing in my own name, and one share standing in the name of Henry R. Bryan. Jr.) also 100 Shares of the capital stock of the First National Bank of Durham, N.C.; also all my capital stock in the Atlantic Coast line Railroad Company; also all my capital stock in the United States Steel Company or corporation; also all the moneys due me at the time of my death by the Virginia Trust company of Richmond, Va., and the Union Trust Company of New York City, and the National Bank of new Bern, New Bern, N.C. and any other bank or trust company; also all moneys that may be found in the iron safe in my library and in my lock box in the vault of the National Bank of New Bern; also all my horses, carriages, wagons, carts and harness."
Tenth "All the rest and residue of my property of every kind and nature and wheresoever situate, not hereinbefore disposed of, I give, bequeath and devise to my beloved son, Charles S. Bryan, and to my beloved grandchildren, Gray Bryan, Mary Bryan and Margaret Bryan, share and share alike."
In the fourth item there is a legacy to each of certain servants; in the fifth. to the testator's daughter-in-law. in the seventh, a devise of the mansion and lot to his wife for life, with remainder in fee to the testator's son, Charles S. Bryan; in the eighth, a bequest of books, silver, etc., to his wife, and in the ninth a gift to her of a lease and rental made by him to the Craven Chemical Company. *Page 824 
The case was referred to J. C. Clifford, who made a report containing his findings of fact and conclusions of law. Exceptions were filed, and all the findings of fact were approved by the judge, except the eighth, ninth, seventeenth, nineteenth, and twenty-second, which were modified, and all the conclusions of law affirmed, except the fourth, which also was slightly modified.
The material facts were found to be these.
3. According to the inventory of the executrix, the testator's real estate at the time of his death was valued at $202,000 and his personal property at $311,000.
4-5. According to the inventory filed with the Commissioner of Revenue and the finding of the referee and judge, a fair value of the real estate was $237,600 and of the personal property $198,274.64.
6. In addition to the personal property, stocks and bonds of the total value of $150,491.
7. The testator's indebtedness, not including commissions to the executrix, was $135,347.37 and the net value of the estate at the time of the decedent's death was $411,389.36.
8. The testator owned 30,000 or 40,000 acres off timber lands, a part of which was sold, and he and the purchases agreed on an adjustment where by the testator received from the Blades Lumber Company $100,000 of which $25,000 was paid in cash and the residue of $75,000 represented by notes of the company, has since been paid, a portion thereof after the testator's death, and all these payments were credited upon the purchase price of lands sold to the Pamlico Lumber Development Company. After the death of the testator the executrix made a further contract with the Blades Lumber Company by which $25,000 additional was to be paid for other to be cut.
9. Subsequent to the execution of the will and prior to his death testator sold 30,000 acres of timber land or country land to the Pamlico Lumber Company at a recited consideration of $360,000 part of which was paid to testator in cash, certain commissions allowed, leaving a balance represented by notes payable to the testator in the sum of $322,000 these being secured by mortgage or deed of trust on the land conveyed. All of these notes were disposed of during testator's lifetime, with the exception of $129,560, included in the inventory of the executrix and the notes of J. B. Blades Lumber Company set forth in the inventory of the executrix.
10. The testator owned other country lands, not yet sold, of the value of $27,250.
11. All the James City property, i.e., all the 600 acres not included in the leasehold estates or in the village proper, is country land, of the value of $75,000. *Page 825 
12. The testator was indebted to his son, Charles S. Bryan, in an amount which was agreed to be $107,534.12, and the executrix delivered to said Charles S. Bryan notes payable to the estate in the sum of $136,954,62, and he receipted for it as follows: In payment of the indebtedness of the estate to him, $107,534.12; in payment of legacies to him and his children, $29,420.50.
13. This compromise was made in good faith.
14. Prior to this, Charles S. Bryan's Children had conveyed to him their interest in the testator's estate.
15. Alice H. Bryan, the executrix, has received in cash, or in notes treated and disposed of as cash since the death of her testator, including the notes delivered to Charles S. Bryan, $242,432.04, including $11,174, money borrowed by the executrix.
16. The executrix has disbursed and distributed, including the $136,954, 62 in notes delivered to Charles S. Bryan, the sum of $236,278.98.
17. There has come in to the hands of the executrix from dividends, rents, and interest collected, the sum of $65,303.20. In addition to these, the executrix has received on notes, money, etc., the sum of $29,073.48, all of which are accruals of the estate since the testator's death, not including any sum for the notes delivered to Charles S. Bryan.
18.The total expense charged by the executrix against this income is $53,563.44, consisting of items set out in the referee's report.
19. Included in the receipts of the executrix since the death of the testator is $3,295, interest, dividends, etc., due at the time of his death, but collected thereafter, and neither of the accounts for expenses of the estate includes commissions for the executrix or any unpaid sums due to attorneys.
20. One third of the expense should be allocated to property specifically devised.
21. The lands mortgaged to secure the notes of the Pamlico Lumber Company in the sum of $129,560 were sold under the mortgage and purchased by Charles S. Bryan for $150,000 an expense account of $13,000 having been incurred in the sale, so that Charles S. Bryan received less than the principal and interest of his debt.
22. The total receipts were $242,432.04 The disbursements, not including unpaid attorneys' fees or commissions, embrace expenses which should be allocated to property specifically devised.
The conclusions of law are as follows:
1. It is apparent from an inspection of the will and from the facts found by the referee that major part of the assets of the estate which were capable of yielding interest, profit, or dividend, were specifically devised. In the opinion of the referee the specific bequests and devises of interest-bearing property were intended to carry to the beneficiaries there of the interest, profits and dividends, as well as the corpus of the *Page 826 
property so bequeathed or devised; that it is illogical to hold that the testator intended by the word "income" used in item third of the will, to restrict the payment of the bequests there in set forth to the comparatively small income derived from property not specifically bequeathed or devised. The referee, therefore, concludes that in directing that the bequests mentioned in item third should be paid out of the income from his estate, meant to direct that the same be paid out of the gross income of his estate coming into the hands of his executrix not specifically bequeathed or not necessary to pay debts or charges of administration.
2. That the authority given to his executrix in said item of the will to pay said legacies at her convenience should, in the opinion of the referee, be construed as authorizing her to pay the same in the orderly administration of the estate and within a reasonable time, considering all the circumstances surrounding the estate.
3. That the bequests set forth in item third of the will partake of the nature of demonstrative bequests or legacies as construed by then referee and it was the intention of the testator that the same should be paid with in a reasonable time, notwithstanding the failure of sufficient funds in any definite source designated from which the same were to be paid.
4. That the executrix shall be recharged, if necessary, to pay the bequests mentioned in item three of the will, with the following items, to wit:
 Bequest paid to residuary legatee ............... $29,420.59 Inheritance tax paid State of North Carolina .... 8,176.41 A just proportion of the carrying expenses charged to properties specifically bequeathed as set forth in finding of fact Nos. 18, 19 and 20 ......................................... 16,140.48 ---------- Total deductions ............................. $53,737.39
which would leave a surplus in the hands of the executrix with which to pay legacies mentioned in item three of the will.
5. It was the duty of the executrix under the direction of item two of the will if necessary to sell all of the country real estate set forth in findings of fact Nos. 10 and 11, and the debts having been paid out of the personal estate, and a legacy in the sum of $29,420.50 having been paid to the residuary legatee, and the residuary legatee being one and the same person, to wit, Charles S. Bryan, the referee is of the opinion that the legatees mentioned in item three of the will have a right in equity to have the country land remaining unsold as set forth in findings of fact Nos. 10 and 11, subjected to sale by the executrix under the order of the court to place assets in her hands with which to discharge said legacies. *Page 827 
6. The referee is of the opinion and so concludes, that Charles S. Bryan, the residuary legatee and devisee, received of the executrix the bequest of $29,420.50. charged in equity as trustee to return to same in to the estate to the extent that such return might be necessary in order to pay the bequests mentioned in item third of the will.
7. The referee concludes finally that the plaintiffs and each of them are entitled to recover of the executrix the respective bequests set forth in item three of the will, with interest, the same to be diminished, however, by any State tax properly assessable against such legatee, and which tax has been discharged by the executrix.
8. That they are entitled to an order that all of the country land or so much thereof as may be necessary be sold with which to discharge said judgment.
9. That they are entitled to a judgment and order of the court requiring Charles S. Bryan to return into the estate the sum of $20,420.50, or so much thereof as may be necessary to discharge this judgment.
10. That in the event of the discharge of said judgment by the executrix, that she is entitled to be reimbursed out of any funds or assets charged with the payment of debts or legacies which would otherwise go into the hands of the residuary legatee.
Upon the foregoing facts and conclusions of law it was adjudged that the plaintiffs recover the amount of their respective legacies, with interest; that they be paid by the executrix from any funds she has in hand belonging to the estate of the testator, and if such funds are insufficient for this purpose, that Charles S. Bryan repay to the executrix the sum of $29,420.50, the amount of the legacy paid him and his children, and to him as assignee of this children; and, further, that the executrix be required, if necessary, to sell and dispose of the country lands for the payment of the judgments rendered in favor of the plaintiffs, it appearing that the executrix has paid off and discharged a large amount of the indebtedness out of the testator's personal estate; also that the executrix, after paying the judgments, shall be reimbursed out of any funds or assets charged with the payment of debts and legacies which would otherwise go into the hands of the residuary legatees, etc.
The defendants excepted and appealed.
As affecting the controversy, legacies may be divided into three classes: General, specific, demonstrative. Are the bequests named in the third item of the will specific or demonstrative? To this paramount question most of the exception have direct or indirect relation.
A general legacy is a bequest which is chargeable generally upon the testator's personal estate, and is not so given as to distinguishable from other parts of the estate. McGuire v. Evans, 40 N.C. 269; Graham v.Graham, N.C. 297; Smith, 192 N.C. 687.
A specific legacy is the bequest of a particular thing or money specified and distinguished from all the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor. Grahamv. Graham, supra; Smith v. Smith, supra.
A demonstrative legacy is a bequest of money or other fungible goods, charged upon a particular fund in such a way as not amount to a gift of thecorpus of the fund, or to evince an intent to relieve the general estate from liability, in case the fund fail, and so described as to be indistinguishable form other things of the same kind. Baptist University v.Borden 132 N.C. 476, 488; Croom v. Whitfield, N.C. 143; Kelly v.Richardson, 100 Ala. 584; Annotation, 11 L.R.A. (N.S) 61, Such legacies "are called demonstrative, and, like general legacies, are gifts of mere quantity, but differ from these by being referred to a particular fund for payment. They are so far general that, if the particular fund be called in or fail, the legatees will be permitted to receive their legacies out of the general assets; yet so far specific as not to be subject to abatement, with general legacies, on a deficiency of assets. They are thus specific in one sense and pecuniary in another; specific, as given out of a particular fund, and not of the estate at large; pecuniary, as consisting only of definite sums of money, and not amounting to a gift of the fund itself, or any aliquot part of it, the mention of the fund being considered rather by way demonstration than condition — rather as showing how and by what means the legacy may be paid than whether it shall be paid at all. Smith v.Fitzgerald, 3 Ves. B. (Eng.) 2; Ward on Legacies, 21. A familiar instance given in the case last cited is a bequest of ten pounds which J.S. owes tothe testator; when in truth J.S. does not owe any such money, the gift fails; but if he gives ten pounds, and wills that the same be paid out of the money he has in a certain place, or out of a particular debt due him, the devise is good, notwithstanding there should appear to be no money in the place or no such debt owing. The distinction seems to be this: If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed, though the fund *Page 829 
totally fail. But where the gift is of the fund itself, in whole or in part, or so charged the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific, and consequently, liable to be adeemed by the alienation or destruction of the object. In this, as in other questions springing from the construction of wills, the intention of the testator is principally to be ascertained, and it is said to be necessary that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will to constitute a legacy specific. If it be manifest there was a fixed and independent intent to give the legacy, separate and distinct from the property designated as the source of payment, the legacy will be deemed general or demonstrative, though accompanied by a direction to pay it out of a particular estate or fund specially named,"Walls v. Stewart, 16 Pa. St., 275,281,282.
Each of the legacies in item three is bequest of money charged upon a particular fund, not amounting to a gift of the Corpus and is so described as to be indistinguishable from other things of the same kind. We must, therefore, ascertain whether the will manifests an intention to relieve the estate from liability if the fund fail — that is, whether the testator intended to make the particular fund, not merely the primary, but the exclusive source of payment. On this point Baptist University v.Borden, supra, is not decisive, the item therein construed expressly providing for the payment in money of any deficiency in the bonds, stocks, and evidences of debt which were designated as the primary source. The appellants contend that the income is the only fund out of which these legacies can be paid; that the testator's dominant purpose and intention was to keep intact his personal property and his city and suburban real property for his wife, his son, and his grandchildren; and to permit nothing to interfere with his plan. The intention, however, is that which is expressed in the will and not that which may have existed in the maker's mind if at variance with the obvious meaning of his words. McIver v.McKinney 184 N.C. 393. Conceding that the intention is controlling, we should nevertheless bear in mind the leaning of the courts against construing doubtful terms in to a specific gift, because the gift is lost upon the failure of the fund from any cause, and because it is not subject to the equitable principle of equality be abatement, Perry v. Maxwell.17 N.C. 488, 503. We should remember, too, that an intention to make a bequest specific must not only be clear McGuire v. Evans, supra), but must either be expressed in reference to the legacy, or must otherwise plainly appear from the will. In the third item we find nothing inconsistent with the position that "the income from may estate" was pointed out as the primary, but not the exclusive, fund out of which the bequests are to be paid. Neither the *Page 830 
world "exclusive" nor any of its synonyms was used to qualify the gifts or to circumscribe the fund. 52 L.T.N.S., 754. The terms of these bequests are not final, of course, but we arrive at the same conclusion when we explore the whole will in search of the expressed intention. In our opinion the testator had no doubt that all the legacies would be paid. According to the inventory filed by the executrix, he left an estate valued at more than $500,000 — real estate, $202,000, and personal property, 311,000; he made provision for the payment of his debts; with the exception of about $25,000, he gave his entire estate to his wife and son; the legatees named in item three were given $22,000. True, the legacies in question were to be paid at the convenience of the executrix — clause having regard to the necessity of delay in collecting the income from time to time, but not conferring upon the executrix authority to pay the legacies or to withhold payment in her unlimited discretion. Our conclusion is that the bequests appearing in the third item of the will are demonstrative and not specific.
Are these legacies to be paid out of the gross or the net income of the estate? The Judge Concurred in the referee's conclusion of law that the testator did not intend to restrict payment of the legacies to the income derived from property not specifically devised or bequeathed, but that the gross income not necessary to pay debts or charges of administration and not specifically bequeathed was chargeable with the payment. "Income" is defined as "that gain or benefit (usually measured in money) which proceeds from labor, business or property". Whether it imports gross or net income usually depends on the context and the subject-matter; for example," an annuity to be paid from the income of my property" is held to be a charge upon the gross income. This, we think, is the sense in which the word was used in item three. It will be noted that these are not gifts of the income from his estate (40 Cyc., 1879), but gifts of money to be paid out of the income. The intention was to make these legacies a charge upon the gross income of the entire estate.
If there is a failure of the fund from which payment of the legacies is to be derived, which is the consequence? Liability to ademption is a distinctive feature of a specific legacy; and as already indicated, a demonstrative legacy is so far specific that it is not liable to abatement with the general legacies upon a deficiency of assets, except to the extent that it is to be treated as a general legacy after the application of the fund designated for its payment. Baptist University v. Borden, supra. Treated in this sense and to this extent as general, the legacies in item three, if the fund fail, must be paid with other general legacies out of the residuary estate, if sufficient for this purpose. 28 R.C.L., 300, sec. 279. *Page 831 
While the legacies in item three are demonstrative, they are also pecuniary in the sense that are to be paid in money; and the general rule is that pecuniary legacies bear interest from the end of one year after the testator's death Hart v. Williams, 77 N.C. 426; Moore v. Pullen,116 N.C. 284. This rule of law was not modified by the phrase "to be paid at the convenience of my executrix." As to the date from which the interest runs the judgment is free from error.
For the purpose and to the extent of satisfying the aggregate amount of these legacies, the executrix is chargeable with the gross income received by her from the estate of the testator since her qualification; and in case of a failure of this fund (which seems to be incompatible with the finding of facts), the residuary estate may be resorted to in order to make good the deficiency, total or pro tanto, including return of the legacy of $29,420.50 paid by the executrix to Charles S. Bryan.
We understand the judgment to provide that if the income has been diverted or improperly used for purpose to which other funds or property should have been applied, the funds or property intended for or properly applicable to these specific purposes may be substituted Pro tanto for the diverted income, and in this conclusion we discover no error.
Our opinion is:
1. The legacies in item three demonstrative
2. That they are made a charge upon the gross income of the entire estate.
3. If the fund fail, the residuary estate is chargeable with the deficiency.
There are many exceptions to the court's findings of facts, but if there is any evidence to support the several findings, they are not subject to review on appeal to this Court; and we cannot conclude that either of them is without supporting testimony. Conclusions of law are sustained except in the respects in which the judgment is modified, and the judgment as modified here in affirmed.
Modified and affirmed.
APPEAL BY CHARLES S. BRYAN