NORTH CAROLINA NATIONAL BANK, EXECUTOR, U/W JOHN T. MATTHEWS, DECEASED v. O. B. CARPENTER, W. F. THOMASON, CLARADELL H. MATTHEWS, GAYLE MATTHEWS, MANUS AND JUDY MATTHEWS

No. 72

(Filed 15 March 1972)

1. Wills § 28— effective date of will

A will becomes effective at the testator's death unless a contrary intent appears from the language of the will. G.S. 31-41.

2. Wills § 28— construction — intent of testator

The dominant purpose in construing a will is to ascertain and give effect to the testator's intent, which must be found in the words testator used, in the setting in which he used them.

3. Wills § 58— specified number of shares of stock — accretions occurring between date of will and date of death

Where testator owned 900 shares of the stock of a corporation at the time he executed a will bequeathing 10 shares of the stock to his employee "if he is still employed by said Company at the time of my death," and as a result of a recapitalization, the 900 shares were retired and 250,000 shares of new stock were issued to testator in lieu thereof prior to testator's death, it was *held* that the employee is entitled to receive under the will only 10 shares of the stock as it existed at testator's death without accretions resulting from the

recapitalization, it being testator's intent that the legatee's right to the gift was to be determined at the time of the testator's death.

On *certiorari* to review the decision of the Court of Appeals filed July 14, 1971, affirming the judgment entered in the Superior Court of MECKLENBURG County (by *Thornburg, J.*) at the February 22, 1971 Session. The case on appeal was docketed and argued at the Fall Term 1971 as No. 116.

The plaintiff, North Carolina National Bank, Executor, instituted this civil action for the purpose of having the court construe the will of John T. Matthews, deceased, and determine the rights of the legatees under Items IV and V of the will. Item IV provided: "I give and bequeath to O. B. Carpenter ten (10) shares of my stock in Wil-Mat Corporation if he is still employed by said Company at the time of my death." Item V provided: "I give and bequeath to W. F. Thomason ten (10) shares of my stock in Wil-Mat Corporation if he is still employed by said Company at the time of my death."

The testator executed his attested will on August 2, 1965. On that date he and Hugh Wilkin each owned 900 shares which comprised all the outstanding capital stock of Wil-Mat Corporation. Each share had a par value of $100.00.

On October 5, 1966, the two owners changed the corporate structure of Wil-Mat, retiring the 1800 shares outstanding and in lieu thereof issuing 500,000 shares of new stock, each share of the par value of $1.00. As a result of the recapitalization, the testator became the owner of 250,000 shares of stock in the corporation. Neither stockholder made any contribution to the corporation except the surrender of his old stock for the new. The testator died on August 16, 1968.

Each named legatee contended before Judge Thornburg that at the time the testator executed his will he owned 900 shares of stock in Wil-Mat and that the bequest to each was ten shares or 1/90th of the testator's entire holding. When the number of shares was increased to 250,000 shares between the date of the will and the date of the testator's death, the legacy to each appellant should be 1/90th of the new issue, or 2,777.75 shares. After hearing, Judge Thornburg adjudged that each legatee was entitled to receive ten shares as provided in the will. Both O. B. Carpenter and W. F. Thomason appealed.

*Wardlow, Knox, Caudle & Knox by C. Ralph Kinsey, Jr. and Lloyd C. Caudle for defendant appellants O. B. Carpenter and W. F. Thomason.*

*Boyle and Alexander by B. Irvin Boyle and R. C. Carmichael, Jr. for Defendant Appellee Claradell H. Matthews.*

*Blakeney, Alexander & Machen by Brown Hill Boswell for plaintiff appellee.*

HIGGINS, Justice.

The appellants contend that Items IV and V of the will are specific legacies contemplating the gift of stock according to conditions at the time the will was executed rather than at the time of the testator's death. They claim that all accretions resulting from the stock split should go the legatees. As authority they cite a number of cases, among them decisions of this Court in *Smith v. Smith,* 192 N.C. 687, 135 S.E. 855; *Shepard v. Bryan,* 195 N.C. 822, 143 S.E. 835; and *Trust Co. v. Dodson,* 260 N.C. 22, 131 S.E. 2d 875.

In *Shepard v. Bryan, supra,* the Court discussed at length the different types of legacies. However, the Court did not have before it and did not deal with the specific question now presented. *Smith v. Smith, supra,* and *Trust Co. v. Dodson, supra,* involved accretions which occurred after the testator's death and after the legatees' rights had accrued.

[1, 2] In cases from other jurisdictions, judges—some text writers joining them—have advanced an interesting theory, somewhat professional in its approach, contending that stock splits and stock dividends occurring after the execution of a will are merely changes in form and not in substance and should go to the legatee even though they were declared and delivered to the testator during his lifetime. In short, they contend in such case, the will should speak as of the date of its execution rather than the date of the testator's death. The argument is not at peace either with our statute or our decided cases. Acceptance of appellants' theory would begin a countdown on our rule that a will becomes effective at the testator's death unless a contrary intent appears from the language of the will. This Court has been consistent in holding that the dominant purpose in construing a will is to ascertain and give effect to the testator's intent. Intent must be found in the words

he used, in the setting in which he used them. *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298; *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246. "Evidence cannot be heard to explain, add to, take from, modify, or contradict a will when its terms plainly indicate the testator's purpose as to persons or things mentioned in it . . . . " *In re Will of Farr,* 277 N.C. 86, 175 S.E. 2d 578.

At the time the testator executed the will he owned one-half (900 shares) of the capital stock in Wil-Mat Corporation. The appellants evidently were employed by Wil-Mat at the time the will was executed, for the testator conditioned his gift on their employment by Wil-Mat at his death. The clear intent is that each legatee's right to the gift was to be determined at the testator's death. The clear wording of the will neither requires nor permits a different construction.

The controversy arose because of the capital restructure between the date of the will and the date the testator died. The restructure was completed one year, three weeks and three days after the will was executed. The testator lived thereafter for one year, nine months and eleven days. With full knowledge of the increase in the number of his shares, he permitted the bequest to remain at ten shares for each legatee. Nothing whatever indicates any dissatisfaction with the terms of the will.

G.S. 31-41 provides: "Every will shall be construed, with reference to the real and personal estate comprised therein, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." A will takes effect and speaks as of the testator's death. *Trust Co. v. McKee,* 260 N.C. 416, 132 S.E. 2d 762.

[3] We find nothing in the will which indicates the complaining legatees are entitled to more than the ten shares provided in the will. "This Court can no more make the language of a will than it can make the will. Where there is language of doubtful meaning used in the will, for the purpose of interpreting the meaning of such doubtful language, the Court may try to ascertain the intention of the testator. But some language is too plain, the meaning too obvious, to admit of interpretation. In such cases the language of the testator must be taken to mean what it says." *Whitfield v. Garris,* 131 N.C. 148, 42 S.E. 568. "The jurisdiction of the courts may be invoked to construe a

will when, and only when, the language used in the will is so uncertain, vague, ambiguous, or conflicting that it creates a doubt as to the true intent of the testator. If the devise is couched in language which is clear and has a recognized legal meaning, there is no room for construction." *Rhoads v. Hughes,* 239 N.C. 534, 80 S.E. 2d 259.

The language in Items IV and V of the will says "ten (10) shares" and ten (10) shares it is.

The Court of Appeals was correct in so deciding and its decision is

Affirmed.