EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

═══════════

R. GENE EDMUNDSON, EXECUTOR, OF THE ESTATE OF C. JULIAN WILSON (DECEASED) v. MARGUERITE W. MORTON, JOE B. MORTON, EDWIN B. WILSON, W. W. MASON, L. L. MASON, LOUISE TOLLEY, CAROLYN W. JONES, W. H. STOVALL, JAMES A. HOWARD, ROBERT W. HOWARD, GEORGIA HOWARD POMETTO, JOHN HOWARD, GLADYS SYKES WALLACE, ELIZABETH D. SYKES AND NANCY B. MCKEE

No. 333PA91

(Filed 4 September 1992)

**1. Wills § 58.1 (NCI3d) — bequest of stock — general bequest — stock splits and dividend reinvestments — right to accessions**

A bequest of corporate stocks was intended to be a general bequest, and the beneficiaries were thus entitled to receive accessions to the stocks from routine stock splits and dividend reinvestments, where testator bequeathed "all of the stocks . . . which I may own as inherited by me from my wife" to the wife's nieces and nephews, share and share alike, and thereafter listed "for identification purposes" the number of shares of each stock that he inherited from his wife; the entirety of the will reveals that testator grouped or categorized his beneficiaries into two classes according to their relationship to him and the origin of the property which each class was

EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

to receive; and testator devised and bequeathed his family property to members of his own family and property that had belonged to his wife to members of the wife's family.

**Am Jur 2d, Wills § 1535.**

2. **Wills § 58.1 (NCI3d)— bequest of stock—right to stock splits, stock dividends, and dividend reinvestments**

Absent any expression of intent in the will or compelling circumstances to the contrary, accessions to publicly held stocks by way of stock splits, stock dividends or dividend reinvestments occurring in the normal course of business between the date of execution of the will and the date of testator's death should pass to the beneficiary of the stock named in the will.

**Am Jur 2d, Wills § 1535.**

ON writ of certiorari to review the decision of the Court of Appeals, 103 N.C. App. 253, 404 S.E.2d 890 (1991), modifying and remanding the judgment for defendant-appellants entered by *Johnson (E. Lynn), J.,* on 6 February 1990 in Superior Court, GRANVILLE County. Heard in the Supreme Court on 12 March 1992.

*Cheshire, Parker and Butler, by D. Michael Parker, for defendant-appellants James A. Howard, Robert W. Howard, Georgia Howard Pometto, John Howard, Gladys Sykes Wallace, Elizabeth D. Sykes and Nancy B. McKee.*

*Perry, Kittrell, Blackburn & Blackburn, by Charles F. Blackburn and Charles M. White, III, for defendant-appellees Marguerite W. Morton and Joe B. Morton, Executors of the Estate of Marguerite W. Morton, Joe B. Morton, Edwin B. Wilson, W.W. Mason, L.L. Mason, Louise W. Tolley and Carolyn W. Jones.*

LAKE, Justice.

This case presents essentially a question of interpretation of a will, involving accessions (accretions) to certain bequeathed property and whether the testator intended the bequest directly in question to be general or specific in nature.

The bequest directly in question was of certain stocks and bonds inherited by testator from his wife and bequeathed by him as a collective unit. The essence of the question is the determination of the proper legatees of normal accessions to the shares of these

corporate stocks, which accessions occurred by way of routine stock splits and dividend reinvestments between the times of testator's acquisition thereof, his execution of the will and his death. As such, this is a case of first impression in North Carolina.

The plaintiff, executor of the estate of C. Julian Wilson, brought this action for declaratory judgment in Superior Court, Granville County seeking an interpretation of the testator's will and a declaration of the rights of the beneficiaries under the will with respect to the bequests set forth in Items Five and Nine of the will. The case was submitted to the trial court upon stipulated facts.

The testator, C. Julian Wilson, died 11 September 1983. His last will, dated 22 March 1979, was duly submitted for probate. In Item Five, testator bequeathed "all of the stocks and bonds which I may own as inherited by me from my wife, . . ." share and share alike, to his wife's family. Item Five provides as follows:

> ITEM FIVE: I give and bequeath to my nephews-in-law and my nieces-in-law who may be living at the time of my death, and Elizabeth Sykes, widow of my nephew-in-law, Arthur Sykes, share and share alike, all of the stocks and bonds which I may own as inherited by me from my wife, Rachel H. Wilson, and for identification purposes such stocks and bonds which I inherited from my wife are as follows:
>
> 228 Shares American Telephone and Telegraph Company, common
>
> 120 Shares American Tobacco Company, common
>
> 5 shares Carolina Power & Light Company, preferred
>
> 494.590 Shares Investors, Mutual, Inc., common
>
> 131.189 Shares Investors Variable Payment Fund, Inc., common
>
> U.S. SAVINGS BONDS, SERIES E
>
> | NUMBER | DATE | MATURITY VALUE |
> | --- | --- | --- |
> | L4004877933E | Dec. 1943 | $ 50.00 |
> | Q4008735615E | May 1943 | 25.00 |
> | C4003195302E | Sept. 1943 | 100.00 |
> | C4003195303E | Jan. 1943 | 100.00 |
> | C4003195304E | Jan. 1943 | 100.00 |

EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

| | | |
|---|---|---|
| C4003195305E | Jan. 1943 | 100.00 |
| C4003195306E | Jan. 1943 | 100.00 |
| C4003195307E | Jan. 1942 | 100.00 |
| C4003026589E | Feb. 1942 | 100.00 |
| C4003195308E | March 1942 | 100.00 |
| C114698955E | Dec. 1945 | 100.00 |
| C114698956E | Dec. 1945 | 100.00 |
| C114698957E | Dec. 1945 | 100.00 |
| C114698958E | Dec. 1945 | 100.00 |
| C146275941E | April 1949 | 100.00 |
| C146275942E | April 1949 | 100.00 |
| C146275943E | April 1949 | 100.00 |
| C146275944E | April 1949 | 100.00 |
| C146275945E | April 1949 | 100.00 |
| C146275964E | April 1949 | 100.00 |
| C146275966E | April 1949 | 100.00 |
| C146275967E | April 1949 | 100.00 |
| C9340623E | Juen [sic] 1944 | 500.00 |

The shares of stock specified in Item Five represented the total shares of stock testator inherited from his wife, Rachel H. Wilson. The 228 shares of American Telephone and Telegraph Company were held by testator at the date of execution of his will and the same number continued to be held at the date of his death. The 120 shares of American Tobacco Company were held at the date of execution of the will, and 240 shares of this stock were held at the date of death as a result of a stock split. The 5 shares of Carolina Power & Light Company preferred stock were held at the date of execution of the will, and 20.877 shares of this stock were held at the date of death as a result of dividend reinvestments. The 494.590 shares of Investors Mutual, Inc. had increased to 850.59 shares at the date of execution of the will as a result of dividend reinvestment, and 850.59 shares of this stock continued to be held at the date of death. The 131.189 shares of Investors Variable Payment Fund, Inc. had increased to 202.231 shares at the date of execution of the will, and 277.791 shares of this stock were held at the date of death, all of which increases resulted from dividend reinvestments.

Item Nine of the will is a residuary bequest wherein testator bequeathed all the rest and residue of his property to his own brother and sister and to his nieces and nephews. Item Nine provides as follows:

EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

ITEM NINE: I bequeath and devise the rest and residue of the property which I may own at the time of my death, real and personal, tangible and intangible of every nature and wherever situated, including all property which I may acquire or become entitled to after the execution of this will to my brother and sister and nieces and nephews, in the following proportions:

(a) To my nephew, W.W. Mason, an undivided one-eighth share;

(b) To my nephew, L.L. Mason, Jr., an undivided one-eighth share;

(c) To my brother, William R. Wilson, an undivided one-fourth share;

(d) To my sister, Marguerite W. Morton, an undivided one-fourth share;

(e) To my nephew, Edwin B. Wilson, an undivided one-eighth share;

(f) To my nephew, Joe B. Morton, an undivided one-eighth share.

According to the Stipulation of Facts entered into by the parties and submitted to the trial court, after testator's execution of the will and before his death, certain of the U.S. Savings Bonds, Series E, listed in Item Five (having a maturity value of $1,775) were "exchanged," along with other Series E Bonds, for certain Series HH bonds (having a maturity value of $16,000) by L.L. Mason, "attorney in fact for C. Julian Wilson, said L.L. Mason being a beneficiary pursuant to Item 9 of the referenced Will." On 24 October 1991, after this case was docketed in this Court, the defendant-appellees filed motion to supplement the record with the affidavit of L.L. Mason attesting that he had no recollection of having a power of attorney for any purpose by C. Julian Wilson, that he did write checks for Wilson from time to time, that Wilson decided to sell certain of the "E" bonds, that be observed Wilson sign these bonds for purposes of sale, and that when the proceeds of the sale of these bonds went into Wilson's checking account upon request by Wilson he and a bank officer advised Wilson to purchase "HH" bonds. The Court determines this motion should be allowed and the affidavit considered with the case. For the reasons hereinafter

set forth, this affidavit, while considered, does not affect our decision in this case.

The trial court, upon the stipulated facts, ruled that Item Five of the will "is a general bequest, and that the beneficiaries thereof shall receive the entirety of the bequest, including any accessions resulting from stock splits and stock dividends, as well as the Series E Bonds." The defendant beneficiaries under Item Nine of the will (the residuary clause) appealed to the Court of Appeals contending the bequests under Item Five were specific bequests and that all accretions from the date of the will to the death of the testator passed to them under Item Nine.

The Court of Appeals interpreted the language of Item Five of the will to "indicate" a specific bequest and held that the Item Five beneficiaries take only the specified number of each of the stocks therein listed, with all accessions thereto occurring by way of stock split or stock dividends between the execution of the will and testator's death passing to the Item Nine beneficiaries. The Court of Appeals, also relying upon the stipulated facts, further held that the transfer of the Series E bonds by the testator's attorney-in-fact did not work an ademption, and thus the Item Five beneficiaries "are entitled to the entirety of the original bequest of Series E bonds." *Edmundson v. Morton*, 103 N.C. App. at 258, 404 S.E.2d at 893. The defendant beneficiaries under Item Five (the family of testator's wife) petitioned this Court for discretionary review, contending the Item Five bequests were general bequests which passed all such accessions to the designated stocks, before and after the testator's death, to them.

[1] We agree with the holding of the Court of Appeals that the Item Five beneficiaries take the specified number of each of the stocks therein listed, together with all accessions to those stocks occurring *since* testator's death. However, for the reasons herein set forth, we reverse that portion of the Court of Appeals' decision holding that the accessions to the corporate stocks occurring between the time of execution of the will and testator's death do not pass along with the bequest.

When engaging in the troublesome area of interpretation of a will it is, of course, axiomatic, and this Court has stated, that "[i]t is an elementary rule in this jurisdiction 'that the intention of the testator is the polar star which is to guide in the interpretation of all wills . . . .'" *Pittman v. Thomas*, 307 N.C. 485, 492,

EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

299 S.E.2d 207, 211 (1983) (*quoting Clark v. Connor*, 253 N.C. 515, 520, 117 S.E.2d 465, 468 (1960) ). These two decisions are helpful in the difficult and disquieting task which we now face in the instant case — of determining what a person now deceased meant by particular words he used in life for the disposition of his property to take effect at his death. *Morris v. Morris*, 246 N.C. 314, 98 S.E.2d 298 (1957). The decisions in *Pittman* and *Clark* are relevant in setting forth certain rules of interpretation or construction which are particularly applicable to the circumstances of the case at hand.

In *Pittman* this Court stated:

In a sentence which has been frequently quoted, this Court has said: "The will must be construed, 'taking it by its four corners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant." *Patterson v. McCormick*, 181 N.C. 311, 313, 107 S.E. 12 (1921). In referring to the "circumstances attendant" we mean "the *relationships* between the testator and the beneficiaries named in the will, and the condition, nature and extent of [the testator's] property." *Wachovia Bank and Trust Co. v. Wolfe*, 243 N.C. at 473, 91 S.E.2d at 250.

*Pittman*, 307 N.C. at 492-93, 299 S.E.2d at 211 (emphasis added).

In the instant case we find the "relationships" between the testator and his named beneficiaries to be significant, particularly with respect to the way in which the beneficiaries were grouped or classed according to the "nature and extent" of the property each group was designated to receive. The entirety of the will reveals that, other than taking care of perfunctory, administrative matters in Items One, Two, Ten and Eleven, and one specific bequest of his tractor and cultivator in Item Eight, the testator has grouped or categorized his beneficiaries into two classes, each according to their *relationship* to him as a class and according to the *origin* of the property which each class, as a collective unit or group, was designated to receive. The two classes are: (1) members of his own family (a brother, a sister and four nephews) to whom he gives his family property in Items Three and Four, and (2) members of his wife's family (his nephews-in-law and nieces-in-law) to whom he gives the property that belonged to his wife in Items Five and Six of the will.

**EDMUNDSON v. MORTON**

[332 N.C. 276 (1992)]

In *Clark* this Court stated:

> In ascertaining this intention [of the testator] the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the expressed intention of the testator which is sought.
>
> Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared, so as to ascertain *the general plan and purpose* of the testator, if there be one. . . . If, when so considered, the intention of the testator can be discerned, that is the end of the investigation.

*Clark*, 253 N.C. at 520-21, 117 S.E.2d at 468 (emphasis added) (citations omitted).

In considering the will of C. Julian Wilson as a whole, under these fundamental rules of testamentary interpretation or construction, we do indeed perceive a "general plan and purpose" on the part of the testator. This general plan and purpose was to keep the original properties of the two families, which had come into his ownership and care during his lifetime, whole, separate and, if not sacrosanct, secure for the sole benefit and inheritance of those members of each family from which the properties came who were living at his death, without regard to the monetary value or any appreciation or depreciation of those properties at the time of his death.

While we also consider the determination of whether a bequest in question is a general bequest or a specific bequest frequently helpful in ascertaining the testator's intention, we agree with the Court of Appeals that such determination in this or any given case of interpretation is not *per se* dispositive or to be given any more weight than other factors and circumstances to be considered. In this case, however, we consider that the bequest directly in question (Item Five), in light of its wording and the factors above set forth, is in fact a general bequest as held by the trial court.

The general rules for determining whether a bequest is general or specific in nature are relatively clear, but their proper application to the innumerable variations in wording and circumstances presented by testators to the courts is much less certain. A specific legacy is defined as a gift of a particular fund or object—"a par-

ticular thing or money specified and distinguished from all of the same kind, as of a horse, a piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor." *Shepard v. Bryan*, 195 N.C. 822, 828, 143 S.E. 835, 838 (1928); Wiggins, *Wills and Administration of Estates in North Carolina* § 140 (2d ed. 1983) [hereinafter *Wills and Administration*]. *See also Trust Co. v. Dodson*, 260 N.C. 22, 131 S.E.2d 875 (1963). In order to avoid having to apply the principle of ademption, courts usually presume that the testator intended to create a general legacy when he fails to make his intention clear. *Wills and Administration*, § 140. "The tendency of the courts is to hold that a bequest is not specific unless the intent clearly appears in the will." *Moore v. Langston*, 251 N.C. 439, 444, 111 S.E.2d 627, 631 (1959).

A general bequest is defined as "a gift of property which does not specify the exact unit of property which the legatee is to receive." *Wills and Administration*, § 140. Generally, use of the word "my" with the designation of a particular object of testator's property strongly indicates a specific bequest, but when the words "my property" are preceded by the word "all," e.g., "all my property," the presumption is that the testator intended to make a general bequest. *Wills and Administration*, § 140.

In the instant case the key or most significant language of the bequest directly in question (Item Five), where the testator provides for his wife's family on a share and share alike basis, is: "I give and bequeath . . . *all* of the stocks and bonds which I *may* own as inherited by me from my wife, Rachel H. Wilson, . . . ." (Emphasis added.) Clearly, if the testator had stopped the bequest here there would be no doubt that he intended his wife's family who survived him to receive "all" of the stocks she owned and left to him which he might own at his death. His use of the words "which I may own" clearly demonstrates his intent to give such stocks, share and share alike, to this class of beneficiaries, without regard to *any number* of shares of such stocks (more or less) which he might ultimately own at his death. Any doubt or question of this intent arises only from the immediately succeeding language: "and for *identification purposes* such stocks and bonds which I inherited from my wife are as follows: . . . ." (Emphasis added.) We consider this succeeding language and the following listing of certain numbers of shares of certain stocks to be precisely as labeled — a mere identifier of what the testator inherited from

his wife, and as such designed to serve only as an advisory supplement to, rather than a modifier of, the preceding key words of bequest. We thus find this language in Item Five of the will to be consistent with a general bequest and the "general plan and purpose" of the testator to be gleaned from the will as a whole.

A careful examination of the will "from its four corners" quite clearly reveals that "family" and heritage were of utmost importance to C. Julian Wilson. As noted above, in general gifts he takes care of his family in Items Three and Four, and in like manner he takes care of his wife's family in Items Five and Six. In Item Three he devises "all of my real estate" to the identical beneficiaries named in the Item Nine residuary clause and in the same proportions, and he then states: "Since this farm has been in the Wilson family since the Civil War, it is my desire that it will remain in the Wilson family." In Item Four he devises in trust "the Wilson Family Cemetery lot . . . to be used as a family cemetery lot for the Wilson Family . . . ." After giving the stocks and bonds inherited from his wife to her nephews and nieces in Item Five, he bequeathes to his wife's nephews and nieces in Item Six "all of my household and kitchen furniture which formerly belonged to my wife, Rachel H. Wilson . . . ." These four provisions constitute the heart of this will and together they are clearly a plan carefully designed to provide for each "family" according to its heritage. To interpret Item Five of this will in such manner as would separate from the specified stocks inherited from Rachel the natural investment growth and proceeds derived solely from Rachel's stocks, and give these proceeds to the other family, would indeed work an unnatural result and frustrate the testator's overall purpose.

The defendant-appellees argue the ruling of this Court in *Bank v. Carpenter*, 280 N.C. 705, 187 S.E.2d 5 (1972) should be controlling in this case. We disagree. In *Bank v. Carpenter* the testator in two identical provisions bequeathed specifically "ten (10) shares of my stock" in his company to two of his employees on condition each was still employed with the company at the time of testator's death. After execution of the will and prior to testator's death the company was restructured and recapitalized. As a result of this, all of testator's 900 shares in the company were retired and 250,000 shares of new stock were issued to testator. There was no infusion of new capital. It was held under these circumstances that the testator intended that each beneficiary should receive only the 10 shares bequeathed and not any increase in number

of shares resulting from the restructure. This case presents a substantially different scenario from the "circumstances attendant" in the instant case, both in terms of the discernible "intention" of the testators and in the nature or manner of occurrence of the gain or increase in the stock involved.

In *Bank v. Carpenter*, the stock involved was not in a publicly held company, but rather was in a closely held and controlled company. The testator owned one-half of the company, and with his co-owner decided to restructure the company. This restructure presumably had nothing to do with normal financial operation, involving either gain or loss, retained earnings or distribution of profits to the owners or shareholders of the company, either through cash or stock dividends or dividend reinvestments. Likewise, it had nothing to do with the usual basis for a stock split in a publicly owned company traded on a stock exchange, i.e. a reduction in the market price with concomitant, proportionate increase in number of shares to enhance trading in the stock. With respect to the testator's intent and overall control, the Court notes that the restructure was completed over a year after the will was executed and that the testator lived one year, nine months and eleven days thereafter, "[w]ith full knowledge of the increase in the number of his shares [and] permitted the bequest to remain at ten shares for each legatee." *Bank v. Carpenter*, 280 N.C. at 708, 187 S.E.2d at 7.

Further, in *Bank v. Carpenter*, unlike the instant case, the primary issue was whether pursuant to N.C.G.S. § 31-41, with respect to testamentary intent, "the will should speak as of the date of its execution rather than the date of the testator's death." *Bank v. Carpenter*, 280 N.C. at 707, 187 S.E.2d at 7. On this issue the Court maintained our consistent rule that "a will becomes effective at the testator's death unless a contrary intent appears from the language of the will." *Id*. In so doing, the Court noted as to the testator's intention that the bequests were each conditioned on the legatees' employment by the company at testator's death, thus clearly showing the gift was to be determined at date of death.

The question of whether accessions to stock, occurring after execution of the will and prior to death of the testator, pass to the legatee, when such accessions occur routinely in the normal course of business by way of stock splits, stock dividends or dividend reinvestments, is one which has presented considerable difficulty to the courts of other jurisdictions. This conflict and relevant

EDMUNDSON v. MORTON

[332 N.C. 276 (1992)]

commentary thereon is expressed as follows in *Wills and Administration*, § 145:

> Since the courts are not in agreement on the question of dividends declared on specific bequests prior to the death of the testator, the draftsman should move in this area with the utmost caution. The intent of the testator in regard to stock splits and stock dividends should be stated explicitly in the instrument with as little as possible left to conjecture.
>
> In case of a division or a splitting of stock, the change is really one of form and not of substance with the interest of the testator being merely represented by more shares. Thus, if the testator bequeaths "my five hundred shares in a named corporation" and after the execution of the will the stock is split two-for-one with 500 shares being given to the testator, the legatee should be entitled to 1,000 shares, since the split results in a mere formal change.
>
> In the absence of any expression of intent in the will to the contrary, the fact the legatee was designated by the testator to receive the particular stock should be sufficient reason for the legatee to receive stock dividends, whether declared prior to, or subsequent to, the death of the testator.

[2] We find this reasoning persuasive, not only with respect to the case at hand—where for the reasons above stated upon the "circumstances attendant" we hold the testator intended precisely in accord with the above commentary—but also with respect to cases generally where the accessions to publicly held stocks occur routinely in the normal course of the company business. Thus, where the above admonition has not been followed and the intent of the testator is not stated explicitly, we conclude that, absent any expression of intent in the will or compelling circumstance to the contrary, accessions to publicly held stocks by way of stock splits, stock dividends or dividend reinvestments occurring in the normal course of business between date of execution of the will and date of testator's death, should pass to the beneficiary of the stock named in the will.

This case was accepted by the Court upon defendant-appellants' petition for discretionary review (treated as a writ of certiorari due to late filing of petition) on the single issue of whether the Court of Appeals incorrectly ruled as to the accessions to the stocks

TRAVCO HOTELS v. PIEDMONT NATURAL GAS CO.

[332 N.C. 288 (1992)]

bequeathed under Item Five of the will. The defendant-appellees later moved to amend the record with respect to the bequest of the bonds under Item Five and added this issue in their brief filed with this Court. We conclude this issue is not properly before this Court, but notwithstanding this posture, the issue has been, in effect, resolved by our holding that the trial court was correct in designating Item Five as a general bequest.

Upon the foregoing, the decision of the Court of Appeals is

Affirmed in part and reversed in part.