CENTRAL CAROLINA BANK & TRUST COMPANY, N.A., Executor of the Estate of Martha A. Cone, Deceased, and Co-Trustee under Trust Agreement dated August 15, 1986, as amended, Petitioner v. MARTHA CONE WRIGHT, CEASAR CONE, III, KRISTEN GREER CONE, LAURENCE M. CONE, JR., and THE CEMALA FOUNDATION, INC., a North Carolina corporation, Respondents·

No. COA95-1325

(Filed 19 November 1996)

## Wills § 140 (NCI4th)— gift to charitable foundation—general or residuary bequest—intent of testatrix

When the language, punctuation and attendant circumstances of the execution of an amended trust agreement which distributed the trust estate at testatrix's death are considered, the testatrix intended that a gift to a charitable foundation of the lesser of sixty percent of the residuary estate or thirty million dollars was to be a general bequest, rather than a residuary bequest, which was to be paid to the foundation before division of the residuary estate.

**Am Jur 2d, Wills § 1525.**

Appeal by respondents Kristen Greer Cone and Laurence M. Cone, Jr. from Order entered 2 October 1995 by Judge Russell G. Walker, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 11 September 1996.

This case involves interpretation of a will, trust agreement and amendment to the trust agreement which control distribution of the estate of Mrs. Martha A. Cone and the allocation of estate taxes between the individual beneficiaries and a private charitable foundation.

Martha A. Cone died 12 April 1993. She was survived by two living children, respondent-appellees Martha Cone Wright and Ceasar Cone, III, and by two grandchildren, the issue of her deceased son, respondent-appellants Kristen Greer Cone and Laurence M. Cone, Jr.

Mrs. Cone was the widow of Ceasar Cone, II who died on 14 November 1986. The bulk of Mr. Cone's forty million dollar estate had passed to Mrs. Cone. After receiving her distribution from her husband's estate, Mrs. Cone revised her estate plan. The last will of Martha A. Cone, dated 29 November 1988, devised the "rest, residue, and remainder" of her estate to "Central Carolina Bank & Trust

Company, N.A. as Co-Trustee under that certain trust agreement between me as Settlor and Central Carolina Bank & Trust Company, N.A. as a Co-Trustee executed prior to execution of this Will on August 15, 1986, and as amended to the date of my death."

Mrs. Cone's trust agreement, dated 15 August 1986, provided for the distribution of the trust estate at her death under Article V titled "Distribution and Termination." Article V of the 1986 trust agreement made general bequests to individuals and institutions in sections 5.01 through 5.11, then devised the "rest, residue and remainder of the Trust estate" to the "children of the Settlor surviving her in equal shares, provided, however, the issue of a deceased child surviving her shall take per stirpes the share their parent would have taken had he or she survived." Article IV of the 1986 Trust Agreement provided that the Trustees, in their discretion, pay "any estate, inheritance, succession, death or similar taxes payable by reason of the Settlor's death, together with any interest thereon or additions thereto, without reimbursement from the Settlor's executor or administrator, from any beneficiary of insurance upon the Settlor's life, or from any other person."

On 29 November 1988, Mrs. Cone amended her 1986 Trust Agreement and revoked Article V in its entirety and replaced the old Article V with a new Article V also titled "Distribution and Termination." The provisions of the new Article V are the subject of the controversy here. Under the new Article V, Mrs. Cone first directs that the Trustee "shall pay all estate, inheritance, succession, death, or similar taxes payable by reason of the Settlor's death, together with any interest thereon or other additions thereto, without reimbursement from the Settlor's executor or administrator, from any beneficiary, or from any other person, and then divide the Trust estate . . . and make the following distributions in termination of the trust: . . .". Immediately following, in sections 5.01 through 5.09, Mrs. Cone makes the following bequests and devises:

5.01. The sum of Twenty-Five Thousand dollars ($25,000) to the Holy Trinity Episcopal Church of Greensboro, North Carolina;

5.02. The sum of Ten Thousand dollars ($10,000) to each of the Settlor's grandchildren who survive her, provided, however, the issue surviving the Settlor of a deceased grandchild shall take per stirpes the share their parent would have taken had he or she survived.

5.03  The sum of Twenty Five Thousand dollars ($25,000) to each of the following nieces and nephews of the Settlor:

Milo A. Crawford, now residing at Chapel Hill, North Carolina;

Madge Crawford Street, now residing at Chillicothe, Ohio;

Eugene B. Crawford, Jr., now residing at Wilmington, Delaware;

Rosalind Abercrombie Shields, now residing at Bethlehem, Pennsylvania;

Lane Abercrombie Dickinson, now residing at Richmond, Virginia;

Charles L. Abercrombie, Jr., now residing at Danville, Virginia;

Ann Abercrombie Williams, now residing at Kill Devil Hill (sic), North Carolina;

Milo B. Abercrombie, Jr., now residing at Danville, Virginia;

Lura Patricia Holley, now residing at Winston-Salem, North Carolina;

Madeline Holley Schiffman, now residing at Greensboro, North Carolina;

Marion Holley Milner, now residing at Charlotte, North Carolina;

or if any such nieces or nephews of the Settlor shall have predeceased her leaving issue surviving her, then to the issue, (living at the Settlor's death) of such deceased niece or nephew per stirpes;

5.04.  The sum of Twenty-Five Thousand dollars ($25,000) to the children of Martha Holley Green, to be divided equally among them and/or the issue (living at the Settlor's death) per stirpes of any of them that shall have predeceased the Settlor leaving issue surviving the Settlor;

5.05.  The sum of Two Thousand dollars ($2,000) to Irene Marable, if she shall survive the Settlor;

5.06.  The sum of Two Thousand dollars ($2,000) to the Settlor's former employee, John Marable, if he shall survive her;

5.07. The sum of Two Thousand dollars ($2,000) to Agnes Goldston, if she shall survive the Settlor;

5.08. The lesser of: (a) sixty percent (60%) of the rest, residue and remainder of the Trust estate, after the above distributions under this Article V or (b) the sum of Thirty Million Dollars ($30,000,000); to the Cemala Foundation, Inc., a non-profit corporation organized under the laws of North Carolina with its principal office in Greensboro, North Carolina, in cash or in kind, or partly in cash or partly in kind, provided that this distribution shall be adeemed if and to the extent a deduction for estate tax purposes is not allowed the Settlor's estate for such distribution under Section 2055 (or other applicable sections) of the Internal Revenue Code of 1986, as may be amended from time to time, and as finally determined in the Settlor's federal estate tax proceedings.

5.09. All the rest, residue and remainder of the Trust estate of every kind and description, wherever situated and whether acquired before or after the execution of this Trust Agreement, shall be distributed to the children of the Settlor surviving her in equal shares, provided, however, the issue of a deceased child surviving her shall take per stirpes the share their parent would have taken had he or she survived.

Central Carolina Bank & Trust Company filed a Petition for Declaratory Relief in Guilford County Superior Court seeking a declaratory judgment construing the terms of the will of Martha A. Cone dated 29 November 1988, the trust agreement dated 15 August 1986, and the amendment to the trust agreement dated 29 November 1988. Respondents Kristen Greer Cone and Laurence M. Cone, Jr., the two grandchildren of Martha A. Cone, filed an Answer to the Petition through their Guardian *ad litem* contending that sections 5.08 and 5.09 of the trust amendment, when read together, divide the residue of the trust estate between the family and the Cemala Foundation, capping the gift to the Cemala Foundation at sixty percent of the residuary estate. The grandchildren also contended that in construing the will and trust documents together, any federal estate taxes owing on the estate should be paid from the residuary estate, after the payment of the general bequests but before dividing the residuary estate between the family and the Cemala Foundation. Respondent Cemala Foundation disagreed. Respondents Martha Cone Wright and Ceasar Cone, III, the two children of Martha A. Cone, aligned themselves

with the Cemala Foundation in a separate Answer to the Petition for Declaratory Judgment. Each group of respondents moved for summary judgment. The trial court entered an order granting summary judgment to Respondents Martha Cone Wright, Ceasar Cone, III and the Cemala Foundation and denying summary judgment for respondents Kristen Greer Cone and Laurence M. Cone, Jr. Respondents Kristen Greer Cone and Laurence M. Cone, Jr. appeal.

*Newsom, Graham, Hedrick & Kennon, P.A., by A. William Kennon, Katherine McKee Henrichs, and Joel M. Craig, for petitioner-appellants Central Carolina Bank and Trust Company, N.A.*

*Tuggle, Duggins & Meschan, P.A., by Barbara C. Ruby, for respondent-appellants Kristen Greer Cone and Laurence M. Cone, Jr.*

*Womble, Carlyle, Sandridge & Rice, by Elizabeth L. Quick, Ellen M. Gregg, and Jean T. Adams, for respondent-appellees Martha Cone Wright, Ceasar Cone, III and The Cemala Foundation, Inc.*

EAGLES, Judge.

The threshold question here is whether the gift to the Cemala Foundation in section 5.08 of Article V of the amended trust agreement is a general bequest or a residuary devise. This distinction controls the total value of the estate shares to be received by the Cemala Foundation and the individual beneficiaries and the amount of estate taxes paid from the estate. The value of Mrs. Cone's gross estate for federal estate tax purposes exceeds sixty one million dollars. In granting the summary judgment motion for Martha Cone Wright and Ceasar Cone, III, ("the children"), and the Cemala Foundation, ("the Foundation"), the trial court determined that the gift to the Foundation in section 5.08 was a general bequest of the lesser of sixty percent of the residuary estate or thirty million dollars, to be paid to the Foundation before division of the residuary estate. When section 5.08 is construed in this manner, the estate owes approximately seventeen million dollars in estate and inheritance taxes; the Foundation receives thirty million dollars; and, the children and grandchildren share the net estate, approximately thirteen million, two hundred thousand dollars. In this scenario, each grandchild's share is approximately two million, two hundred thousand dollars.

Alternatively, if section 5.08 is a residuary devise to the Cemala Foundation, as respondents Kristen Greer Cone and Laurence M. Cone, Jr., the grandchildren, contend, the estate would owe approximately twenty one million, five hundred thousand dollars in estate and inheritance taxes, increasing the tax burden by approximately four million dollars. The Foundation would receive approximately twenty two million dollars from the net estate and the children and grandchildren will share the amount remaining, approximately seventeen million dollars. Each grandchild's share would be increased by approximately six hundred thousand dollars, leaving each grandchild a share of approximately two million eight hundred thousand dollars.

A general bequest is a gift of property from the estate that does not specify the exact piece of property the beneficiary shall receive. *Edmundson v. Morton*, 332 N.C. 276, 284, 420 S.E.2d 106, 111 (1992). It may be satisfied from any of the general assets of the estate. *Id.* The residue of an estate consists of the property remaining after the payment of all debts, taxes, costs of administration, bequests, legacies or any other payments directed by the testator. *Trust Co. v. Grubb*, 233 N.C. 22, 24, 62 S.E.2d 719, 721 (1950). The residuary beneficiary receives the balance of the estate after all of the estate's obligations are satisfied, including the payment of the general bequests.

Determining whether the devise in section 5.08 is residuary devise or a general bequest requires that we interpret the new Article V, Article V of the 1988 amendment to the 1986 trust agreement. Because it is rare to find two will cases factually alike, previous decisions provide little help in the exercise of interpreting Mrs. Cone's amended trust. However, we rely on past decisions for the applicable rules of construction.

"The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills . . .". *Clark v. Connor*, 253 N.C. 515, 520, 117 S.E.2d 465, 468 (1960). Unless the testator's intent violates some established rule of law or public policy, it will be given effect. *Id.* In ascertaining the testator's intent, the language used in the instrument is the primary source of information. *Id.* The Supreme Court set forth the appropriate analysis for construing the testator's intent from the instrument's language in *Clark v. Connor:*

Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its differ-

ent clauses and provisions examined and compared, so as to ascertain the general plan and purpose of the testator, if there be one. Ordinarily nothing is to be added to or taken from the language used, and every clause and every word must be given effect if possible. Generally, ordinary words are to be given their usual and ordinary meaning, and technical words are presumed to have been used in a technical sense. If words and phrases are used which have a well- defined legal significance, established by a line of judicial decisions, they will be presumed to have been used in that sense, in the absence of evidence of a contrary intent.

253 N.C. 515, 521, 117 S.E.2d 465, 468-69 (1960).

In ascertaining the testator's intent, the court should also consider the instrument "in light of the conditions and circumstances existing at the time the will was made." *Pittman v. Thomas*, 307 N.C. 485, 492, 299 S.E.2d 207, 211 (1983). The court's task is to place itself in the position of the testator. *Id.* The instrument must be construed "taking it by its four corners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant." *Pittman*, 307 N.C. at 492-93, 299 S.E.2d at 211 (*quoting Patterson v. McCormick*, 181 N.C. 311, 313, 107 S.E. 12, 12 (1921)). The "circumstances attendant" include "the relationships between the testator and the beneficiaries named in the will, and the condition, nature and extent of the testator's property." *Id.* Therefore, in our attempt to glean Mrs. Cone's intent from her will and amended trust agreement, we look not only to the words and internal structure of the documents themselves, but also to circumstances surrounding the execution of the controlling instruments that indicate Mrs. Cone's plan for distributing her property.

Several factors lead us to conclude that the trial court was correct in its determination that Mrs. Cone intended a general bequest to the Cemala Foundation. First, we look to the actual text of the trust amendment. At the outset, we note that Article V is a self-contained provision of the trust, bearing the title "Distribution and Termination." All of the testator's property is devised within Article V. The article is divided into nine sections. Sections 5.01 through 5.07 leave specific cash bequests to an institution, the Holy Trinity Episcopal Church of Greensboro, Mrs. Cone's grandchildren, and fifteen other named individuals. The language of sections 5.01 through 5.07 begins consistently with the words "the sum of" and each of the

seven sections (with the exception of 5.02) closes with a semi-colon. A semi-colon is used to separate items in a series of similar items. W.A. Sabin, *The Gregg Reference Manual*, 42 (7th ed. 1993). Section 5.08 mirrors the preceding sections. It begins with the language "the lesser of (a) sixty percent of the rest, residue and remainder of the Trust estate . . . or (b) *the sum of* Thirty Million Dollars . . ."(emphasis added). Section 5.07 closes with a semi-colon, leading to the language of 5.08, however, section 5.08 closes with a period. Section 5.09 does not follow the same pattern of language and punctuation. It is punctuated as a self-contained paragraph and does not devise "the sum of" any particular amount of money to any particular beneficiary. Rather, section 5.09 devises "[A]ll the rest, residue, and remainder of the Trust estate of every kind and description, wherever situated" to the "children of the Settlor."

This Court has the discretion to "transpose words, phrases or clauses and to supply or disregard punctuation" to reach the intent of the testator. *Rawls v. Rideout*, 74 N.C. App. 368, 372, 328 S.E.2d 783, 786 (1985). Consequently, we are permitted to interpret the amended trust document emphasizing any punctuation and word choices which suggest Mrs. Cone's intent. It is reasonable to infer from the text of Article V that Mrs. Cone intended the residuary devise in section 5.09 to operate separately from the bequests in the preceding eight sections.

The grandchildren contend that the language in section 5.08 limiting the gift to the Foundation to the lessor of thirty million dollars or sixty percent of the residue was intended to cap the gift to the Foundation at sixty percent of the residue, providing a sixty-forty split between the family and the Foundation. The "circumstances attendant" to the execution of the amended trust suggest otherwise. Mrs. Cone's estate consists primarily of assets she received from the estate of her deceased husband, Ceasar Cone, II. Mr. and Mrs. Cone established the Cemala Foundation during their lifetimes and funded the trust with intervivos cash gifts until their deaths. In October 1986, Mr. Cone had drafted a trust agreement which provided a general bequest of thirty million dollars to the Foundation. Mr. Cone did not execute that amendment prior to his death. Approximately two months after the death of her husband, Mrs. Cone executed a codicil to her own will providing a general bequest to the Cemala Foundation of thirty million dollars. This codicil was revoked by her last will and testament executed in November of 1988. In 1976, Mr. and Mrs. Cone set up six separate trusts for each of their six grandchildren, funding

each trust with one million dollars. A short time before Mr. Cone's death, Mr. and Mrs. Cone made an additional one million dollar gift to the six separate trusts for the grandchildren and established and funded two additional trusts for two grandchildren born after 1976. At the time of her death, the total approximate value of these trusts was over fourteen million dollars. If Mrs. Cone had intended the devises to her family and the Foundation to stand on equal footing, she could have simply given "all the rest, residue and remainder of her trust estate" sixty percent to the Cemala Foundation and forty percent to the "children of the Settlor." However, she divided Article V into separate sections, addressing her gift to the Foundation separately and distinctly.

Our review of the text of the amended trust document and the circumstances attendant to its execution lead us to conclude that the trial court was correct in determining that Mrs. Cone intended to make a general bequest to the Cemala Foundation in section 5.08 of Article V. We conclude she intended her trustee to satisfy the bequest to the Foundation before dividing the residuary estate among her children and grandchildren.

The grandchildren also contend that Mrs. Cone intended that the estate and inheritance taxes owed on her trust estate be paid from the residuary before division among the beneficiaries and not apportioned between the beneficiaries in accordance with the tax burden on each beneficiary. Mrs. Cone explicitly directed that the residuary of her trust estate bear the burden of paying the taxes and expenses of her estate. Since the residue of an estate consists of the property remaining after payment of the bequests and other payments directed by the testator and, as we have determined that the gift to the Cemala Foundation is a general bequest, Mrs. Cone's bequest to the Cemala Foundation should be paid before the division of the residuary estate. Since the gift to the Cemala Foundation is a general bequest and not a residuary devise, we need not reach the question of how taxes should be apportioned among the residuary beneficiaries.

For all of the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.

Judges WYNN and WALKER concur.